## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

NOAH PATRICK GRIFFIN, et al.,

       Plaintiffs,

v.                                                                                    Civ. No. 23-215 GJF/JHR

CITY OF ARTESIA, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANTS' MOTIONS TO DISMISS

THIS MATTER is before the Court on motions to dismiss filed by Defendant Eddy County [ECF 4], Defendant State of New Mexico [ECF 6], Defendant City of Artesia [ECF 9], and Defendant Chavez [ECF 44] (collectively "Motions").[1]  The Motions are fully briefed.  ECFs 20, 22, 25, 27, 34, 35, 45.  The Court heard oral argument on July 31, 2023 ("Hr'g").[2]  For the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** the Motions.

## I.  BACKGROUND

### A.  The Parties

Plaintiff Noah Patrick Griffin lives in Artesia, New Mexico.  ECF 1-2 at ¶ 1 ("Am. Compl.").  Although the Amended Complaint is silent on the topic, Plaintiffs Rose Wissiup and Danielle Page are Griffin's mother and sister, respectively.  *See id.* at ¶¶ 2–3 (only alleging that Wissiup and Page lived in New Mexico at all relevant times); ECF 27 at 4 (describing Plaintiffs' interrelationships for the first time); Hr'g at 22:15 (noting that Griffin and Wissiup neither

---

[1] Defendant City of Artesia included in its Motion Defendants Jon Perez, Ryan Rodriguez, Dillon Ripley, Lorenzo Cardona, Jim Minter, David Bailey, Rafael Zamarron, and Kirk Roberts.  Defendant State of New Mexico's motion similarly includes Defendant Dianna Luce.

[2] The citation refers to a recording of the hearing which is not yet available on CM/ECF.

cohabitate nor share expenses).  Defendants span the governmental spectrum: three government entities—the State of New Mexico ("State") and two of its subdivisions, the City of Artesia ("City") and Eddy County ("County")—along with ten individual officials, including Fifth Judicial District Attorney Dianna Luce, Artesia Police Department Corporal Rigo Chavez, and eight other individually named Artesia Police Officers (collectively "Defendants").

This case began in state court following two encounters between Plaintiff Griffin and the Artesia Police Department.  *E.g.*, Am. Compl. at ¶ 25.  The details are sparse but, from what the Court can gather, City Defendants arrested Griffin on January 2, 2022, and again on February 17, 2022.  *Id.* at 4–8.  Both times, Plaintiffs allege, Griffin was simply "walking on a public thoroughfare or public easement within the City of Artesia."  *Id.* at ¶¶ 28, 45.  Plaintiffs provide no further details regarding what spurred Griffin's first arrest, *id.* at ¶ 39, but the description of his second arrest featured somewhat more detail.  Plaintiffs allege that City Defendants arrested Griffin because he was reportedly on Artesia High School property in violation of a posted criminal trespass order.  *Id.* at ¶¶ 46–48.

Motivations aside, both arrests resulted in Griffin's detention and incarceration—his second stint being at the Eddy County Detention Center ("ECDC") and lasting until October 12, 2022.  *Id.* at ¶¶ 37, 56.[3]  According to Plaintiffs, Griffin's pretrial detention itself gave rise to two additional Fourth Amendment violations.  First, while en route to some unspecified jail on January 2, City Defendants allegedly forced Griffin to scan his face with his phone so they could search it without a warrant or his consent.  *Id.* at ¶ 39.  And sometime after his second arrest, Griffin alleges that other ECDC inmates assaulted him, breaking his tooth and nose.  *Id.* at ¶¶ 74–75; *see also* Hr'g at 1:03:33.

---

[3] Although Plaintiffs allege that Griffin's second incarceration occurred at ECDC, they say nothing about where the City Defendants took him on January 2.  Nor do they specify when he was released the first time.

Prosecutors charged Griffin with seven offenses but ultimately dismissed all charges *nolle prosequi*. *Id.* at ¶ 77–82; *see also State v. Griffin*, D-503-CR-2022000280 (Carlsbad Dist. Ct. Jan. 2, 2022); *State v. Griffin*, D-503-2022000284 (Carlsbad Dist. Ct. Feb. 17, 2022).   About a year later, Plaintiffs filed suit in state court.  *Griffin, et al. v. City of Artesia, et al.*, D-503-CV-20230015 (Carlsbad Dist. Ct. Feb. 13, 2023).  Plaintiffs amended the Complaint to add one claim under the New Mexico Civil Rights Act.  *Id.*  Defendants then removed the case to this Court.  *Id.*

**B.  The Operative Complaint**

The Amended Complaint presents fourteen causes of action.  With two exceptions, it does not specify which Defendants are named in which counts nor who did what to whom.  Each Count begins with a perfunctory incorporation statement: "Plaintiffs re-state and re-allege all facts alleged in this Complaint, whether set forth above or below, as though fully set forth herein." *E.g.*, *id.* at ¶ 121.  Besides Counts 12 and 13, none of the Counts specify whom they target.  Generally, the other twelve claims refer to "Defendants."  *E.g.*, *id.* at ¶¶ 122–130 (accusing "Defendants, *or one or more of them*" of "misus[ing] the legal process") (emphasis added).  The Court summarizes the claims as follows.

Beginning with their federal constitutional claims, Plaintiffs allege that (presumably all) Defendants violated Plaintiff Griffin's Fourth Amendment rights by: (a) searching his phone (Count 1), (b) arresting and detaining him (Count 2), and (c) conspiring to deprive him "of his rights to equal protection under the Fourth Amendment" (Count 11).  *Id.* at ¶¶ 90–102, 165–75.[4] They also make an analogous claim under the state constitution's Fourth Amendment equivalent, with equal vagueness.  *Id.* at ¶¶ 190–95 (Count 14).  Additionally, Plaintiffs bring a Fourth Amendment civil rights claim against the City of Artesia and its police chief (Count 13).  *Id.* at ¶¶

_____

[4] Plaintiffs do not specify whether Count 2 refers to the arrest on January 2 or February 17.

183–89.

Plaintiffs also bring state common law tort claims. They allege that (apparently all) Defendants are liable for common law battery (Count 3), false arrest (Count 4), false imprisonment (Count 5), malicious prosecution (Count 6), negligence (Count 7), negligent infliction of emotional distress (Count 8), intentional infliction of emotional distress (Count 9), and prima facie tort (Count 10). *Id.* at ¶¶ 103–64. And they specifically target the City of Artesia for the tort of negligent hiring. (Count 12). *Id.* at ¶¶ 76–82.

## II.  APPLICABLE LAW

### A.  Rule 12(b)(6) Standard of Review

A Rule 12(b)(6) motion prompts a court to "assess[ ] whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). A complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). Facial plausibility requires factual allegations that support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

The plausibility distinction matters because *only* "well-pleaded" allegations can be presumed true. *Compare id.* at 679 *with* ECF 20 at 2 (insisting that all allegations must be accepted as true). Well-pleaded allegations do not include labels, conclusions, or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and quotations omitted). Nor do they encompass a "legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Rather, plausibility requires allegations that support a "reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal*, 556 U.S. at 663 (requiring more than facts "merely consistent with a defendant's liability")

(internal quotations omitted).

The 12(b)(6) analysis is a two-step process. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). First, the court categorizes the individual allegations as either factual and entitled to a presumption of truth, or merely legal conclusions that are not presumed true and may be ignored. *Id.* at 679. Second, the court determines whether the factual allegations plausibly state a claim for relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Courts should be hesitant to dismiss a claim with prejudice and should instead err on the side of allowing a plaintiff to amend. *Seale v. Peacock*, 32 F.4th 1011, 1029 (10th Cir. 2022). But a court should dismiss a claim with prejudice when it finds that it would be futile to allow the plaintiff to amend that claim. *Id.* at 1027.

## B.  42 U.S.C. § 1983 Liability

Federal law provides that any "person" acting under color of state law who "subjects . . . [another] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. This statute offers no substantive rights itself but instead provides a path by which a plaintiff can vindicate his federal civil rights. *E.g.*, *Spielman v. Hildebrand*, 873 F.2d 1377, 1386 (10th Cir. 1989). To state a § 1983 claim, the plaintiff must allege (1) the violation of some right provided by the United States Constitution or federal law and (2) that the person who committed the alleged violation was acting under color of state law. *E.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988).

The § 1983 pleading prerequisites depend on the nature of the defendant(s). "Persons to whom § 1983 applies" include local governments and their employees. *Monell v. Dep't of Soc.*

5

*Servs.*, 436 U.S. 658, 663 (1978).  To succeed against an individual, a plaintiff must plausibly allege: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [state law]."  *E.g.*, *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).  Without more, however, such allegations cannot extend § 1983 liability from a government employee to his employer.  *See Monell*, 436 U.S. at 690–92 (rejecting a *respondeat superior* theory of liability in a § 1983 claim against a local government).  Suing a local government requires plausibly alleging that a government agent either implemented or executed an "official policy" or informal "custom" attributable to the government agency.  There must be a direct causal link between the municipal policy or custom and the alleged constitutional violation.  *E.g.*, *Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992).

Moreover, Rule 12 assumes heightened significance in § 1983 actions.  Because plaintiffs often use "Defendants" interchangeably in reference to a "governmental agency and . . . governmental actors sued in their individual capacities," a § 1983 claim requires pleading particularly detailed factual allegations.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008).  Consequently, "the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against *each of the defendants*."  *Id.* at 1250 (emphasis added).  The complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state."  *Id.* at 1250.

### C.  42 U.S.C. § 1985 Liability

The same legislation that created § 1983 contained a sister provision targeting three types of racially motivated conspiracies.  42 U.S.C. § 1985.  This case implicates conspiracies that, in

part, deprive persons of equal protection or privileges and immunities.  42 U.S.C. § 1985(3).  To state a claim under § 1985(3), a plaintiff must allege a conspiracy motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *see also United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 836–37 (1983) (§ 1985's "predominate purpose" is eliminating racially motivated conspiracies); *Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240 (D.N.M. Sept. 30, 2012) (dismissing § 1985 claim that lacked any allegations of class-based discriminatory animus); *Luchetti v. N.M. State Pers. Bd.*, No. CIV 20-1232, 2021 WL 3772204, at *3 (D.N.M. Aug. 25, 2021) ("[T]he Tenth Circuit has consistently dismissed § 1985(3) claims devoid of racial, discriminatory animus.").

### D.  Sovereign Immunity

For well over a century, the Supreme Court has made clear that "each State is a sovereign entity in our federal system" and such sovereigns are "not to be amenable to the suit of an individual without [the sovereign's] consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (citing *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)).  New Mexico is no exception.  Absent a specific statutory waiver, the state's sovereign immunity bars civil suits for damages against the state or its subdivisions.  The State has, however, waived its immunity in two statutes relevant here: the New Mexico Tort Claims Act ("NMTCA") and the New Mexico Civil Rights Act ("NMCRA").

#### 1.  New Mexico Tort Claims Act

The NMTCA waives the State's sovereign immunity for certain torts committed by the State, its subdivisions, or its employees.  N.M. Stat. Ann. §§ 41-4-4 to -12 (1978).  The Motions before the Court implicate two of the NMTCA's prerequisites.  First, the NMTCA waives the immunity

7

of local governments and their employees, but only as to certain claims.  For example, when a law enforcement officer is sued for actions "within the scope of his duties," the NMTCA waives immunity only for "personal injury, bodily injury, . . . false imprisonment, false arrest, malicious prosecution . . . or any other deprivation of rights, privileges or immunities" secured by the federal or state constitutions.  *Id.* § 41-4-12.  But the NMTCA does not waive immunity for unenumerated torts—e.g., negligence, intentional or negligent infliction of emotional distress, or prima facie tort. *Dickson v. City of Clovis*, 2010-NMCA-058, ¶ 19, 148 N.M. 831, 836–37 (negligence); *Derringer v. State of New Mexico*, 2003-NMCA-073, ¶ 6, 133 N.M. 721, 725 (prima facie tort); *Williams v. Bd. of Regents of Univ. of N.M.*, 20 F. Supp. 3d 1177, 1194 (D.N.M. Apr. 29, 2014) (negligent infliction of emotional distress); *McDowell  v. Rio Rancho Police Dep't*, No. 1:20-cv-00153 RB/KK, 2021 U.S. Dist. LEXIS 75225, at *14 (D.N.M. Apr. 19, 2021) (intentional infliction of emotional distress).  Second, to preserve a claim against government-entity defendants, the NMTCA requires "a written notice stating the time, place and circumstances of the loss or injury" unless "the government entity had actual notice of the occurrence."  N.M. Stat. Ann. § 41-4-16(A)–(B) (1978).  Proper notice communicates the "likelihood that litigation may ensue."  *E.g.*, *Galvan v. Bd. of Cnty. Comm'rs for Curry Cnty.*, 261 F. Supp. 3d 1140 (D.N.M. June 1, 2017) (citing *Lopez v. State*, 1996-NMSC-071, ¶ 9, 122 N.M. 611).

## 2.  New Mexico Civil Rights Act

The NMCRA is New Mexico's § 1983 state analogue.  *See* N.M. Stat. Ann. §§ 41-4A-1 *et seq.* (2021) (prohibiting state and local government officials from subjecting others to a "deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico").  The NMCRA waives sovereign immunity to allow lawsuits alleging civil rights violations perpetrated by government employees.

Of the NMCRA's various limitations, two are relevant here.  First, a NMCRA claim can only name a "public body" as a defendant.  *See* N.M. Stat. Ann. § 41-4A-3(C) (2021) (making public bodies liable for the misconduct of their employees when they "act[ ] on behalf of, under color of or within the course and scope of" their employer's authority).  Second, like the NMTCA, the NMCRA requires notice, at least of claims against certified law enforcement officers.  *Id.* § 41-4A-13(A) ("[N]o court shall have jurisdiction" over a NMCRA claim unless a putative plaintiff "present[s] to the certified law enforcement officer's [employer], within one year after an occurrence giving rise to a claim . . . , a written notice stating the time, place, and circumstances" of the claim.); *but see id.* § 41-4A-13(B) (waiving the notice requirement if the governmental entity had "actual notice").

## III.  PARTIES' PRIMARY ARGUMENTS

### A.  Arguments Pertinent to Multiple Parties

All Defendants seek dismissal of some of Plaintiffs' tort claims based on the NMTCA providing general immunity to all government entities and employees except for torts specifically enumerated in the statute. ECF 4 at 6; ECF 6 at ¶ 5; ECF 9 at 6; ECF 44 at 5-7. Plaintiffs fail to address this argument and conceded at oral argument that Counts 7-10 are unenumerated. *See* ECF 20 (failing to address argument); Hr'g at 58:85.

The State and County[5] also assert that Plaintiffs' failure to serve NMTCA notice requires dismissal of Counts 3 through 10.  ECF 4 at 6–7; ECF 6 at 3.  As to this point, Plaintiffs oscillate between (A) saying nothing or (B) reframing the tort claims as constitutional claims to avoid the NMTCA.  *E.g.*, ECF 25 at 4–5; *but see* Hr'g at 1:12:30 (Plaintiffs clarifying that any silence in

---

[5] The City makes a more limited notice argument specifically regarding Wissiup and Page's claims. ECF 9 at 6. Because the Court finds that the Complaint fails to allege facts specific to Wissiup and Page to support their claims, the Court does not reach this notice issue. *See infra* Analysis §§ G, F (dismissing or requiring repleading of Wissiup and Page's claims).

their briefings was a purposeful concession).

### B. State Defendants' Additional Arguments

In their reply brief, State Defendants also argued that Defendant Luce is protected by prosecutorial immunity because the Complaint challenges her overt actions taken exclusively within the scope of her official duties as a district attorney. ECF at 4–5; Hr'g at 44:20 (noting that this argument first appeared in a reply brief [ECF 34]). Because Defendants first raised this issue in their reply, Plaintiffs didn't have the opportunity to address this argument.

### C. County Defendant's Additional Arguments

The County makes three additional arguments of its own: First, Counts 1 and 2 fail to properly plead a policy or practice under *Monell*. ECF 4 at 4-5. Second, Count 14 is too vague to state a claim for relief. *Id.* at 8. And third, Count 11 fails to state a claim because it does not contain any (well-pleaded) allegation of class-based invidious or racial discrimination as § 1985 requires. *Id.* at 7–8.

Plaintiffs contend that they adequately allege a § 1983 claim against the County for wrongfully incarcerating Griffin even through they do not reference any County policy or practice. ECF 20 at 4–5. Second, Plaintiffs insist that despite making no allegation of racial or invidious class-based animus, a § 1985 conspiracy arose when the County's employees acted in tandem to maintain Griffin's incarceration. *Id.* at 5–7 (arguing that the collective acts required to operate a jail are conspiratorial). Third, Plaintiffs assert that their claims meet federal pleading standards because they "re-state and re-allege all facts alleged in the Complaint, whether set forth above or below, as fully set forth herein." *Id.* at 7–8 (quoting Am. Compl. At ¶ 190).

### D. City Defendants' Additional Argument

City Defendants challenge Plaintiffs Wissiup and Page's entitlement to loss of consortium

damages for alleged violations of Griffin's constitutional rights.  The argument is twofold: (1) the Complaint says nothing about their relationships with Griffin and (2) they cannot recover for loss of consortium without allegations that meet the prerequisites of a loss of consortium claim. *Compare* ECF 9 at 4–5, *and* ECF 35 at 2–4, *with* ECF 27 (Plaintiff insisting that loss of consortium is a form of recoverable damages without bringing a separate count for loss of consortium).

## IV.  ANALYSIS

### A.  Arguments Pertaining to Multiple Parties

#### i.  <u>The NMTCA Does Not Waive Immunity for Unenumerated Torts</u>

All Defendants seek dismissal of some of Plaintiffs' tort claims based on the NMTCA providing general immunity to all government entities and employees except for torts specifically enumerated in the statute. ECF 4 at 6-7; ECF 6 at ¶ 5; ECF 9 at 6; ECF 44 at 5-7.  Plaintiffs conceded at oral argument that Counts 7-10 (alleging negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and prima facie tort) are unenumerated. Am. Compl. at ¶¶ 131–164; Hr'g at 58:85.

Plaintiffs may only bring enumerated torts against government entities or employees under the NMTCA. N.M. Stat. Ann. § 41-4-4 (2001); N.M. Stat. Ann. § 41-4-12 (2020); *Dickson*, 148 N.M. at 836–37 (negligence); *Derringer*, 133 N.M. at 725 (prima facie tort); *McDowell*, 2021 U.S. Dist. LEXIS 75225, at *14 (intentional infliction of emotional distress); *Williams*, 20 F. Supp. 3d at 1194 (negligent infliction of emotional distress).

Here, Plaintiffs concede that Counts 7 through 10 allege torts that are not listed in the NMTCA.  Hr'g at 58:85.  Their concession is correct.  A plaintiff also cannot allege unenumerated torts to "demonstrate that . . . the[ir] injuries arose out of . . . a tort enumerated in this section." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 7, 916 P.2d 1313.

Because Counts 7 through 10 allege claims barred by sovereign immunity, amendment would be futile.  Thus, the Court dismisses Counts 7, 8, 9, and 10 as to all Defendants with prejudice.

ii.  Plaintiffs Failed to Provide Adequate Notice Under the NMTCA to The State and County

The State and County assert that Plaintiffs' failure to serve them with NMTCA notice requires dismissal of Counts 3 through 10.  ECF 4 at 6–7; ECF 6 at 3.  Each of these Counts asserts tort claims against government bodies and their employees.  Absent the defendant having actual notice of the suit, a plaintiff cannot bring a tort claim against a New Mexico local government entity without first timely serving NMTCA notice.  *E.g.*, *Martens v. City of Albuquerque*, 2023-NMCA-037, ¶ 4, 531 P.3d 607, 609 (2023); *accord* N.M. Stat. Ann. § 41-4-16 (1978).  Defendants bear the burden of disproving adequate NMTCA notice.  *E.g.*, *Ganley v. Jojola*, 402 F. Supp. 3d 1021, 1075 (D.N.M. Aug. 30, 2019) (citing *Dutton v. McKinley Cnty. Bd. of Comm'rs*, 1991-NMCA-130, ¶ 7, 113 N.M. 51).

At oral argument, Plaintiffs admitted that they did not provide timely NMTCA notice to the State or County.  Hr'g at 16:10–16:40 (stating that Griffin's previous counsel served notice only on the City of Artesia).  Plaintiffs downplayed this concession by arguing that the NMTCA does not apply because these are civil rights claims.  Hr'g at 17:50 (reasoning that torts committed against Plaintiff Griffin while incarcerated are tantamount to substantive due process violations); *e.g.*, ECF 25 at 4–5.  But that is not how these claims are pled. Counts 3 through 10 plead common-law tort claims. Compl. ¶¶ 103-164 (listing claims of "Common-law battery," "Common-law false arrest," "Common-law false imprisonment," "Common-law malicious prosecution," "Common-law negligence," "Negligent infliction of emotional distress," "Intentional infliction of emotional distress," and "Prima facie tort,"). These are tort claims, and the NMTCA provides "the *exclusive*

remedy against a governmental entity or public employee for any tort." N.M. Stat. Ann. § 41-4-17 (emphasis added).

In light of Plaintiffs' concession that they failed to provide timely notice to the State or County, the court concludes that it does not have jurisdiction over Counts 3 through 10 as applied to Defendants Eddy County and the State of New Mexico. Because the 90-day period to provide notice has passed since the occurrences "giving rise to" Plaintiffs' "claim[s]," amendment would be futile. N.M. Stat. Ann. § 41-4-16 (1978); Am. Compl. at 4–8. As such, the Court must dismiss Counts 3 through 10 with prejudice as to Defendants State of New Mexico and Eddy County.[6]

### B.  State Defendants' Waived Their Prosecutorial Immunity Argument

In this Circuit, litigants generally waive arguments first raised in a reply brief because "[doing so] robs the [nonmovant] of the opportunity" to refute the argument. *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000); *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011). Here, State Defendants waited until their reply brief to assert prosecutorial immunity. Hr'g at 44:20–44:47 (admitting the State waited to raise prosecutorial immunity until its reply brief); *compare* ECF 6 at 2, 4–5 (only mentioning "immunity" once in passing without specifically asserting prosecutorial immunity), *with* ECF 34 at 4–6 (arguing prosecutorial immunity under its own point heading).[7]  The Court concludes that State Defendants waived their prosecutorial immunity

---

[6] The statute's notice requirement, however, does not apply to claims brought against individual law enforcement officers. N.M. Stat. Ann. § 41-4-16 (1978). Thus, the Court retains jurisdiction over these claims as applied to Defendants Roberts, Zamarron, Bailey, Minter, Cardona, Ripley, Rodriguez, Perez, and Chavez.

[7] The Court makes no determination in this Order on State Defendants' ability to raise this argument at any other point in this litigation and notes the argument appears at least somewhat meritorious. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (prosecutorial immunity bars claims based on a prosecutor's role in "initiating a prosecution" or "presenting [a] State's case."); *B.T. ex rel G.T. v. Santa Fe Pub. Schs.*, 506 F. Supp. 2d 718, 729–30 (D.N.M. Mar. 12, 2007) (collecting cases and stating "the Tenth Circuit has repeatedly held that prosecutors are absolutely immune for failing to conduct adequate, independent investigations into matters that are referred to them for prosecution."); Am. Compl. at ¶¶ 17, 77, 80, 170, 172 (only alleging that prosecutor Luce (1) was acting under color of state law at all times, (2) "actively prosecuted Griffin," (3) "knew" Griffin's charges were "baseless and unsupported by probable cause"; and (4) that she "conspired with other Defendants" in this allegedly unsupported prosecution).

argument for the purposes of deciding this motion.

## V.   County Defendant's Additional Arguments

The County also contends that Plaintiffs fail to state claims against the County in Counts 1, 2, 11, and 14.  ECF 4 at 4–5, 7–8.  The Court considers each argument below.

### 1.   Counts 1 and 2 Fail to State a Claim Against Eddy County

Although a § 1983 plaintiff can directly sue a local government, the suit must arise from constitutional violations pursuant to the governing body's policies—a "*Monell* claim."  *E.g.*, *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023) (citing *Monell*, 436 U.S. at 690–91).  Under *Monell*, any of the following can show an official policy:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subjected to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.*

The County points out that Counts 1 and 2 fail to mention a County-specific policy that violated Griffin's rights.  The County argues that absent such an allegation, neither claim can survive Rule 12(b)(6).

The Court agrees.  Neither Counts 1 nor 2 mention a policy or practice of any kind, much less an unlawful one.  Instead, both claims unspecifically allege only that these government entities violated Griffin's Fourth Amendment rights and proximately caused his damages by searching his phone, arresting him, and detaining him. Am. Compl. at ¶¶ 90–102. Neither claim satisfies Rule

12(b)(6)'s requisite specificity,[8] much less *Monell*.  Plaintiffs' initial briefing also confused the §

1983 standard for claims against local government entities with the § 1983 standard for claims

against individual officers.  ECF 20 at 4–5.  And at oral argument, Plaintiffs conceded that they

failed to properly plead a *Monell* claim.  Hr'g at 56:12–56:28.

        In sum, the Court dismisses Counts 1 and 2 for failure to state a claim against Defendant

Eddy County.  But because it is possible Plaintiffs may be able to amend their *Monell* claim to

specifically allege an unlawful County policy or custom, the Court dismisses Counts 1 and 2

without prejudice.

### 2.    Count 14 Lacks Specificity and Fails to State a Claim

        The County also attacks Count 14 for its sheer vagueness.  Plaintiffs respond by pointing

to the incorporation clause prefacing Count 14—and every other claim—which states that

Plaintiffs "re-state and re-allege all facts alleged in this Complaint, whether set forth above or

below, as though fully set forth herein."  ECF 27 at 2; *e.g.*, Am. Compl. at ¶ 190.

        In federal court, Plaintiffs must plead their claims with sufficiently plausible factual

allegations.  Fed. R. Civ. P. 8(a); *e.g.*, *Richeson v. United States*, 849 F. App'x 726, 728 (10th Cir.

2021).  Pleadings that do not meet these threshold requirements may be dismissed via a timely

motion to dismiss.  Although a court considering a Rule 12(b) motion must take as true a plaintiff's

factual allegations, that presumption does not apply to everything a complaint alleges.  *Twombly*

---

[8] Rule 12(b)(6) would require allegations that implicate the County.  But neither claim names the County.  Count 1 alleges that "[u]pon information and belief, one or more Johns Doe may have participated in the physical restraint and putative [*sic*] arrest[s]" that occurred in 2022.  The Court will not construe "John Does" as County affiliates to compensate for inadequate pleading.  And Count 2 fares no better because Plaintiffs fail to specify where Griffin's January detention occurred, so Count 2's accusation of unlawful incarceration does not necessarily implicate the County.  Am. Compl. at ¶ 38 ("Griffin was then transported to the Artesia Public Safety Complex or similar facility belonging to . . . *the City, the State, or other Defendants*.") (emphasis added); *id.* at ¶ 99 (alleging that "Defendants" held Griffin in custody unlawfully).  Without specifying "who did what to whom," Counts 1 and 2 state no cognizable claim under current federal pleading standards.  *Robbins*, 519 F.3d at 1249–50.

forbade presuming as true any legal conclusions, unadorned accusations, or perfunctory regurgitations of legal elements.

Further, the Tenth Circuit requires that a complaint adhere to a coherent organizational structure.  A pleading cannot escape *Twombly* and *Iqbal* by incorporating the rest of the complaint without specificity: "[F]orc[ing] the Defendants to carefully comb through [the pleadings] to ascertain which . . . pertinent allegations to which a response is warranted" fails to effectuate the fundamental purpose of notice pleading.  *Ortiz v. New Mexico*, 550 F. Supp. 3d 1020, 1078 (10th Cir. 2021) (quoting *McNamara v. Brauchler*, 570 F. App'x 741, 743 (10th Cir. 2014)).  Such "shotgun" complaints—those that "bring every conceivable claim against multiple defendants" but merely "provide a few pieces of the puzzle as to what happened" and "demonstrate only a general allegation of wrongdoing"—do not unlock the gate to discovery.  *Richeson*, 849 F. App'x at 728; *see also Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) ("The law recognizes a significant difference between notice pleading and 'shotgun' pleading.").

Count 14 is an illustrative example.  It neither specifies to whom or what "Defendants" refers.  Am. Compl. at ¶¶ 191–193.  Nor does it offer any factual allegations—only the naked conclusion that Griffin "suffered a deprivation" of a laundry list of state constitutional rights.  That conclusion is not a "plausible" factual allegation the Court presumes is true.  Nor can Plaintiffs solely rely on vague incorporation by reference because that would force Defendants (and the Court) to comb through the Amended Complaint and, where ambiguity exists, make educated guesses as to Plaintiffs' allegations.  Absent more precise reincorporation, preferably via citation to other parts of the Amended Complaint, the pleading's current iteration does not give Defendants "fair notice of the nature of the claim" nor "grounds on which the claim rests."  *Robbins*, 519 F.3d at 1248.

16

### 3. Count 11 Fails to State a Claim Against the County

To state a § 1985(3) claim, a plaintiff "must show, *inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against . . . official encroachment.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993). A § 1985 claim penalizes not just any conspiracy, but only a conspiracy that targets a member of a protected class by virtue of that immutable trait. *E.g.*, *Tilton v. Richardson*, 6 F.3d 683, 686 (1993).

Here, the County stresses that Count 11 lacks the requisite allegation of a well-pleaded class-based discriminatory intent. ECF 4 at 7–8. At first, Plaintiffs sidestepped the class-based discrimination requirement by reasoning that: (1) § 1985 requires a "conspiracy," and (2) any concerted action by the County—such as maintaining Griffin's incarceration—is a "conspiracy" within the meaning of § 1985. ECF 20 at 5–7. At oral argument, however, Plaintiffs took a new approach—insisting that "mental instability" is Griffin's suspect classification. Hr'g at 36:00–37:39.

Count 11 states no claim under § 1985. All it says is that: (1) "Defendants, or two or more of them," conspired to deprive Plaintiff Griffin of his "rights to equal protection under the Fourth Amendment," and (2) Defendants Chavez, Cardona, and the State acted in furtherance of said conspiracy "by filing a baseless criminal [c]omplaint." Am. Compl. at ¶¶ 166–70. Neither allegation supports a reasonable inference that an invidiously discriminatory animus against Griffin's class characteristics motivated the conspiracy.[9] *Bray*, 506 U.S. at 267–68. Thus,

---

[9] To be clear, Plaintiff Griffin is a "white" "male." *E.g.*, *Noah Patrick Griffin*, RECENTLY BOOKED, https://recentlybooked.com/NM/Eddy/NOAH-GRIFFIN~2391_B078042 (last visited August 10, 2023). And the Amended Complaint makes no mention of mental illness or any other immutable trait susceptible to class-wide treatment.

Plaintiffs have done "no[ ] more than cite to [42 U.S.C.] § 1985 without identifying any facts to support [their] claim." *Archuleta*, 898 F. Supp. 2d at 1253; *cf. Iqbal*, 556 U.S. at 664 (distinguishing between well-pleaded factual allegations and conclusory allegations).

In sum, Plaintiffs fail to state a cause of action under § 1985(3). But since it is possible that Plaintiffs may be able to amend Count 11 to allege the required class-based discriminatory animus, the Court dismisses Count 11 without prejudice as to Defendant Eddy County.

### D. City Defendants' Additional Arguments

The City argues Plaintiffs failed to properly plead loss of consortium for Plaintiffs Wissiup and Page, ECF 9 at 4; ECF 35 at 3–4. The Court agrees.

A plaintiff can claim loss of consortium to recover damages for another person's injury. The claim derives from some underlying tort but may be brought separately because the relational interest between the claimant and the injured party suffers a cognizable "direct injury." *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶¶ 8, 16, 397 P.3d 1279, 1281 (defining the harm as injury to the "relational interest with another who was physically injured").

To recover loss of consortium damages, a plaintiff must make adequate showings the same way that a plaintiff seeking punitive damages must sufficiently allege, among other things, recklessness. *See, e.g.*, *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1238 (D.N.M. Mar. 29, 2019). A loss of consortium claimant must plausibly allege that: (1) the claimant and the injured party shared a "sufficiently close relationship" and (2) the tortfeasor owed the claimant a duty of care. *Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 2011-NMSC-039, ¶ 5, 150 N.M. 650. The first element requires considering a non-exhaustive list of factors where "mutual dependence" is "the key." *Id.* at ¶ 10. To demonstrate the second element—the tortfeasor's duty of care—the claimant must show that "it is foreseeable that the harm inflicted upon the injured party would damage the

18

relationship between the injured party and the claimant." *Id.* at ¶ 5.

The Amended Complaint omits any facts about Wissiup and Page sufficient to satisfy these requirements.  Indeed, it mentions only their state of domicile and the naked conclusion that they "suffered a loss of consortium and of mutual love, companionship, and support as a result of Defendants' wrongful actions."  Am. Compl. at ¶¶ 2–3, 85.  These allegations do not even define the relationships among Plaintiffs, let alone show sufficiently close bonds.[10]  Without such allegations, Wissiup and Page cannot recover loss-of-consortium damages. Thus, these claims are dismissed without prejudice and with leave to amend.

### F.  Rule 12(e)

When a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response," Rule 12(e) authorizes federal courts to *sua sponte* order a "more definite statement." Fed. R. Civ. P. 12(e); *e.g.*, *Luna-Reyes v. RFI Constr., LLC*, 57 F. Supp. 3d 495, 503 (M.D.N.C. Nov. 3, 2014) (collecting cases).  The exercise of such discretion is necessary here given the Amended Complaint's vagueness.  Rather than dismiss the rest of the Amended Complaint in its entirety for failure to articulate claims with requisite plausibility and specificity, the Court will instead order Plaintiffs to file a Second Amended Complaint that complies with federal pleading standards, including obligations under Federal Rule of Civil Procedure 11.[11]

---

[10] Although the briefing later revealed Plaintiffs' interrelationships, facts alleged in motions do not retroactively cure deficient pleadings.  *Legaretta v. Macias*, 603 F. Supp. 3d 1050, 1059 (D.N.M. May 6, 2022) ("Rule 12(b)(6) motion[s] test[ ] the sufficiency of the allegations within the four corners of the complaint." (citing *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)).

[11] After studying the briefing and entertaining extensive oral argument, The Court is convinced that loss of consortium is the only possible claims Plaintiffs Wissiup and Page may conceivably recover. N.M. Stat. Ann. § 41-4A-3 (2021); *Dohaish v. Tooley*, 670 F.2d 934, 937 (10th Cir. 1982) (defining the class of litigants that can sue under NMCRA); *Archuleta*, 897 F.2d at 497 ("§ 1983 claim must be based upon the violation of [a] plaintiff's personal rights, and not the rights of someone else.").

## VI.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motions are **GRANTED IN PART AND DENIED IN PART:**

1. As to Defendants State of New Mexico and Eddy County, Counts 3-10 of the First Amended Complaint are **DISMISSED WITH PREJUDICE**;

2. As to all Defendants, Counts 7-10 are **DISMISSED WITH PREJUDICE**;

3. As to Defendant Eddy County, Counts 1, 2, 11, and 14 are **DISMISSED WITHOUT PREJUDICE**;

**IT IS FINALLY ORDERED** that, pursuant to Rule 12(e), Plaintiffs shall file a Second Amended Complaint that conforms to this Order **no later than thirty days from the date this Order is filed**.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*